IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HAILEY CLINTON<br>3238 Yorktown Drive, Apt. E<br>Oregon, Ohio 43616 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| LEGACY HEALTH SERVICES<br>2841 Munding Drive<br>Oregon, Ohio 43616 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>Legacy Health Services<br>c/o DMD Management, Inc.<br>12380 Plaza Drive<br>Parma, Ohio 44130 | )<br>)<br>)<br>)<br>)<br>) | |
| -and- | )<br>) | |
| SARA RIEGAL<br>c/o LEGACY HEALTH SERVICES<br>2841 Munding Drive<br>Oregon, Ohio 43616 | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Hailey Clinton, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Clinton is a resident of the city of Oregon, county of Lucas, state of Ohio.

2. Legacy Health Services ("Orchard Villa") is a domestic corporation that operated a business located at 2841 Munding Drive, Oregon, Ohio 43616.

3. Orchard Villa was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e-2 *et seq.*

4. Orchard Villa was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Upon information and belief, Defendant Sara Riegal is a resident of the state of Ohio.

6. Riegal was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Orchard Villa who acted directly or indirectly in the interest of Orchard Villa.

7. Riegal was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e-2 *et seq.*

8. Riegal was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

9. Riegal made and/or participated in the adverse actions asserted herein.

## **JURISDICTION & VENUE**

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Clinton is alleging a Federal Law Claim under the Families First Coronavirus Response Act and the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 *et seq.*

11. All material events alleged in this Complaint occurred in Lucas County.

12. This Court has supplemental jurisdiction over Clinton's state law claims pursuant to 28 U.S.C. § 1367 as Clinton's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

14. Within 300 days of the conduct alleged below, Clinton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00685 against Orchard Villa.

15. On June 4, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Clinton regarding the Charges of Discrimination brought by Clinton against Orchard Villa in EEOC Agency Charge No. 532-2021-00685.

16. Clinton received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

17. Clinton has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

18. Clinton has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

19. Clinton is a female.

20. Clinton identifies as a lesbian.

21. Clinton is a former employee of Orchard Villa.

22. Clinton began working for Orchard Villa on or around July 2, 2019.

23. Orchard Villa employed Clinton as a licensed practical nurse.

24. Clinton has little to no history of meaningful discipline.

25. Orchard Villa employed Riegal as the Director of Nursing.

26. Riegal was Clinton's immediate supervisor.

27. During all material events asserted herein, Riegal has and/or had authority to hire, fire, and/or discipline employees.

28. Riegal did not participate in the decision to hire Clinton.

29. Upon information and belief, Riegal is heterosexual.

30. Riegal was aware that Clinton was a lesbian.

31. Riegal was aware that Clinton was married to another woman.

**(Clinton Make Workplace Safety Complaints Regarding Personal Protective Equipment)**

32. Orchard Villa employed Clinton during the COVID-19 pandemic.

33. Orchard Villa is a long-term care facility.

34. Orchard Villa houses elderly patients who are particularly vulnerable to contract COVID-19.

35. Orchard Villa had a policy in place requiring its employees to wear personal protective equipment ("PPE") while treating patients ("PPE Policy").

36. Orchard Villa implemented the PPE Policy for its patients' safety.

37. Clinton noticed that some of her coworkers were not wearing their PPE properly.

38. Clinton complained to Riegal about her coworkers' failure to wear their PPE properly.

39. Clinton complained to Riegal that the failure to wear PPE correctly created an unsafe working environment.

40. Clinton complained to Riegal that the failure to wear PPE correctly endangered the safety of Orchard Villa's residents.

41. Clinton complained to Riegal that the failure to wear PPE correctly endangered the safety of the public.

42. Riegal failed to correct Clinton's coworkers to properly wear their PPE.

43. Riegal failed to enforce Orchard Villa's PPE Policy.

44. Riegal's failure to enforce Orchard Villa's PPE Policy was a violation of R.C. § 4101.11.

45. R.C. § 4101.11 provides that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

46. Orchard Villa's failure to ensure a safe work environment is in violation of R.C. § 4101.12.

4

47. R.C. § 4101.12 provides that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

48. R.C. § 4101.12 further provides that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

49. R.C. § 4101.12 further provides that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

50. Orchard Villa's failure to ensure a safe work environment is in violation of Ohio public policy as recognized by the Ohio Supreme Court: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

51. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

52. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352589, *4 (S.D.

5

Ohio), *report and recommendation rejected on unrelated grounds in Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352630 (S.D. Ohio).

53. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

54. The Tenth District Court of Appeals in *Blackburn*, 22 N.E.3d 1149, at 1158 further held "There is a statewide policy prohibiting termination of employees who report conduct and practices in a dental practice that present a risk of severe harm to patients or staff."

55. The Tenth District Court of Appeals in *Blackburn*, 22 N.E. 3d 1149, at 1158 held that a "dental office" is a "place of employment."

56. Orchard Villa operates a place of employment.

57. As Orchard Villa operates a place of employment, Ohio has a public policy protecting employees of Orchard Villa who report conduct and practices that present a risk of severe harm to staff.

58. Despite these concerns, Riegal did not make any changes.

59. Defendants jeopardized Ohio's public policy ensuring a safe workplace in failing to take any action to ensure a safe workplace following Clinton's complaint.

60. Upon information and belief, Defendants have a policy requiring investigations following receipt of a complaint of unsafe working conditions.

61. An investigation should include interviewing the complainant.

62. An investigation should include interviewing witnesses to the unsafe working conditions.

63. An investigation should include getting a written statement from the complainant.

64. In response to Clinton's complaint of unsafe working conditions, Defendants did not interview witnesses to the unsafe working conditions.

65. In response to Clinton's complaint of unsafe working conditions, Defendants did not get a written statement from Clinton.

66. In response to Clinton's complaint of unsafe working conditions, Defendants did not take corrective action to the unsafe working conditions.

67. Defendants ratified the unsafe working conditions in failing to conduct an investigation into Clinton's complaint.

68. Defendants ratified the unsafe working conditions in failing to take corrective action following Clinton's complaint.

69. Due to Riegal's failure to enforce Orchard Villa's PPE Policy, Clinton contacted the Lucas County Health Department.

70. Clinton contacted the Lucas County Health Department via telephone.

71. After Clinton's complaint, the Lucas County Health Department showed up to Orchard Villa to investigate.

**(Clinton Contracts COVID-19)**

72. The FFCRA requires covered employers to pay their employees up to two weeks' pay if they are ordered to quarantine by a physician.

73. The FFCRA applied to employers with less than 500 employees.

74. Orchard Villa employs less than 500 employees.

75. The FFCRA applies to Orchard Villa.

76. In or around the end of May 2020, Clinton tested positive for COVID-19.

77. In response to Clinton's positive COVID-19 test, her physician ordered Clinton to quarantine.

78. In or around May 2020, Clinton engaged in protected activity by taking leave to quarantine due to testing positive for COVID-19.

79. Nine days after Clinton's positive COVID-19 test, Orchard Villa demanded Clinton return to work.

80. In response to Orchard Villa's return to work demand, Clinton's physician provided Orchard Villa with paperwork reflecting that Clinton needed to be excused from work longer than 9 days due to her positive COVID-19 test.

81. Despite being ordered to quarantine from her physician, Orchard Villa failed to pay Clinton for the period of time that she was quarantining.

## (Orchard Villa Terminates Clinton's Employment)

82. On or around July 3, 2020, Clinton fell ill and went to the emergency room.

83. While at the emergency room, a physician informed Clinton that she was dehydrated.

84. While at the emergency room, a physician ordered Clinton to receive intravenous fluids.

85. While at the emergency room, a physician ordered Clinton to refrain from working for the next two days.

86. The emergency room physician cleared Clinton to return to work on July 5, 2020.

87. After July 5, 2020, Clinton returned to work.

88. On or around July 14, 2020, Riegal terminated Clinton's employment.

89. Riegal terminated Clinton's employment under Orchard Villa's policy governing attendance on holidays ("Holiday Policy").

90. Riegal did not terminate heterosexual employees for violating the Holiday Policy.

91. Riegal did not terminate employees who did not complain about violations of Orchard Villa's PPE Policy for violating the Holiday Policy.

92. Riegal did not terminate employees who did not take leave for COVID-19 for violating the Holiday Policy.

93. Upon information and belief, Defendants have a progressive disciplinary policy ("Progressive Discipline Policy").

94. Defendants have used the Progressive Discipline Policy when disciplining heterosexual employees.

95. Defendants have used Progressive Discipline Policy when disciplining employees who have not complained of violations to the PPE Policy.

96. Under the Progressive Discipline Policy, Clinton had not received any meaningful discipline.

97. Under the Progressive Discipline Policy, Clinton had not received any verbal warnings for the Holiday Policy.

98. Under the Progressive Discipline Policy, Clinton had not received any written warnings for the Holiday Policy.

99. Under Progressive Discipline Policy, Clinton had not been suspended for the Holiday Policy.

100. Defendants skipped steps under the Progressive Discipline Policy when they terminated Clinton's employment for the Holiday Policy.

101. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

102. Skipping steps under the Progressive Discipline Policy is an adverse action.

103. Defendants intentionally skipped steps under the Progressive Discipline Policy when they terminated Clinton's employment for the Holiday Policy.

104. Defendants willfully made the decision to skip steps under the Progressive Discipline Policy when they terminated Clinton's employment.

105. Terminating Clinton's employment was an adverse employment action.

106. Terminating Clinton's employment was an adverse action.

107. Defendants intentionally terminated Clinton's employment.

108. Defendants willfully made the decision to terminate Clinton's employment.

109. Riegal terminated Clinton's employment due to her sexual orientation.

110. Orchard Villa terminated Clinton's employment due to her sexual orientation.

111. Riegal terminated Clinton's employment because she complained about Riegal's failure to enforce Orchard Villa's PPE Policy.

112. Orchard Villa terminated Clinton's employment because she complained about Riegal's failure to enforce Orchard Villa's PPE Policy.

113. Riegal terminated Clinton's employment because she reported Riegal's failure to enforce Orchard Villa's PPE Policy to the health department.

114. Orchard Villa terminated Clinton's employment because she reported Riegal's failure to enforce Orchard Villa's PPE Policy to the health department.

## COUNT I: UNLAWFUL RETALIATORY TERMINATION IN VIOLATION OF THE FFCRA

115. Clinton restates each and every prior paragraph of this Complaint as if it were fully restated herein.

116. Section 5104 of the Families First Coronavirus Relief Act ("FFCRA") provides that it "shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who (1) takes [EPSL] leave…."

117. The FFCRA requires covered employers to pay their employees up to two weeks' pay if they are ordered to quarantine by a physician.

118. The FFCRA applied to employers with less than 500 employees.

119. Orchard Villa employs less than 500 employees.

120. The FFCRA applies to Orchard Villa.

121. In or around May 2020, Clinton engaged in protected activity by taking leave to quarantine due to testing positive for COVID-19.

122. Orchard Villa failed to pay Clinton for her physician-ordered quarantine.

123. Orchard Villa violated the FFCRA when it failed to pay Clinton for her physician-ordered quarantine.

124. After engaging in protected activity under the FFCRA, Defendants terminated Clinton's employment.

125. Defendants terminated Clinton's employment in retaliation for engaging in protected activity under the FFCRA.

126. In terminating Clinton's employment, Defendants willfully violated Section 5104 of the FFCRA.

127. Defendants willful violation of the FFCRA constitutes a violation of the FLSA, 29 U.S.C. § 215(a)(3).

128. There is a causal link between the adverse actions and the employment actions herein, including the termination of Clinton's employment.

129. As a result of Defendants' acts, Clinton has suffered and will continue to suffer damages.

## COUNT II: GENDER DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq.*

130. Clinton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. In *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020), the Supreme Court held that 42 U.S.C. § 2000e-2 *et seq.* prohibition of discrimination "based on sex" includes sexual orientation.

132. Clinton is a member of a statutorily protected class based on her gender under 42 U.S.C. § 2000e-2 *et seq*.

133. Clinton is a member of a statutorily protected class based on her sexual orientation under 42 U.S.C. § 2000e-2 *et seq*.

134. Defendants treated Clinton differently than other similarly situated employees because Clinton failed to conform to Defendants' perception of the female stereotype and/or how a female should act.

135. Defendants discriminated against Clinton on the basis of her gender throughout her employment with the company.

136. Defendants discriminated against Clinton because Clinton failed to confirm to Defendants' perception of the female stereotype and/or how a female should act.

137. As Clinton was married to another woman, Defendants knew or should have known that Clinton is a lesbian.

138. Defendants terminated Clinton's employment without just cause.

139. Defendants terminated Clinton's employment based on her gender.

140. Defendants' discrimination against Clinton based on her gender violates 42 U.S.C. § 2000e-2 *et seq*.

141. Clinton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq*.

142. As a direct and proximate result of Defendants' conduct, Clinton suffered and will continue to suffer damages, including economic and emotional distress damages.

## **COUNT III: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01** *et seq.*

143. Clinton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

144. Clinton is a member of a statutorily protected class based on her gender under R.C. § 4112.01 *et seq*.

145. Defendants treated Clinton differently than other similarly situated employees based on her gender.

146. Defendants discriminated against Clinton on the basis of her gender throughout her employment with the company.

147. Defendants terminated Clinton's employment for calling off on a holiday.

148. Defendants did not terminate heterosexual employees' employment for calling off on a holiday.

149. Defendants terminated Clinton's employment for calling off on a holiday due to her being a lesbian.

150. Defendants terminated Clinton's employment without just cause.

151. Defendants terminated Clinton's employment based on her gender.

152. Defendants' discrimination against Clinton based on her gender violates R.C. § 4112.01 *et seq.*

153. Clinton suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

154. As a direct and proximate result of Defendants' conduct, Clinton suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

155. Clinton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in protected activity under Ohio law.

157. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

158. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

159. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

160. Orchard Villa's failure to ensure a safe work environment is a violation of R.C. § 4101.11.

161. R.C. § 4101.11 provides that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

162. Orchard Villa's failure to ensure a safe work environment is in violation of R.C. § 4101.12.

163. R.C. § 4101.12 provides that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe."

164. R.C. § 4101.12 further provides that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

165. R.C. § 4101.12 further provides that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

166. Orchard Villa's failure to ensure a safe work environment is in violation of Ohio public policy as recognized by the Ohio Supreme Court: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.*, 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

167. The United States District Court for the Southern District of Ohio held "*Pytlinski* is still controlling, it is still good law, and it could not be clearer: 'Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted.'" *Lightner v. CB&I Constructors, Inc.*, No. 14-CV-2087, 2016 WL 6693548, at *10 (S.D. Ohio Nov. 14, 2016) (quoting *Pytlinski*).

168. The United States District Court for the Southern District of Ohio held: "Retaliation against employees who file complaints regarding workplace safety, there, clearly contravenes the public policy of Ohio." *Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352589, *4 (S.D.

15

Ohio), *report and recommendation rejected on unrelated grounds in Hucke v. Marriott Hotel Services, Inc.*, 2008 WL 11352630 (S.D. Ohio).

169. The Tenth District Court of Appeals in *Blackburn v. Am. Dental Ctrs.*, 22 N.E.3d 1149, 1158 (10th Dist. 2014) held that R.C. §§ 4101.11 and 4101.12 "establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters."

170. The Tenth District Court of Appeals in *Blackburn*, 22 N.E.3d 1149, at 1158 further held "There is a statewide policy prohibiting termination of employees who report conduct and practices in a dental practice that present a risk of severe harm to patients or staff."

171. The Tenth District Court of Appeals in *Blackburn*, 22 N.E. 3d 1149, at 1158 held that a "dental office" is a "place of employment."

172. Orchard Villa operates a place of employment.

173. As Orchard Villa operates a place of employment, Ohio has a public policy protecting employees of Orchard Villa who report conduct and practices that present a risk of severe harm to staff.

174. Clinton complained to Riegal about her coworkers' failure to wear their PPE properly.

175. Despite these concerns, Gardner did not make any changes.

176. Defendants' termination of Clinton's employment jeopardizes these public policies.

177. Defendants' termination of Clinton's employment was motivated by conduct related to these public policies.

178. Defendants had no overriding business justification for terminating Clinton's employment.

179. As a direct and proximate result of Defendants' conduct, Clinton has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT V: RETALIATION IN VIOLATION OF R.C. § 3721.24**

180. Clinton restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

181. During her employment, Clinton reported to Riegal that her coworkers were violating Orchard Villa's PPE Policy.

182. Clinton reasonably believed that her coworkers' violation of Orchard Villa's PPE Policy constituted an act that neglected the safety and health of patients.

183. Riegal failed to take corrective action to Clinton's complaint about her coworkers' violation of Orchard Villa's PPE Policy.

184. Due to Riegal's failure to enforce Orchard Villa's PPE Policy, Clinton contacted the Lucas County Health Department.

185. Clinton contacted the Lucas County Health Department because she reasonably believed that Riegal's failure to enforce Orchard Villa's PPE Policy constituted an act that neglected the safety and health of patients.

186. Riegal retaliated against Clinton by terminating her employment based on her complaints regarding this conduct.

187. Orchard Villa retaliated against Clinton by terminating her employment based on her complaints regarding this conduct.

188. Pursuant to R.C. § 3721.24(A), it is unlawful for an employer to take an adverse action against a person who, "in good faith, makes or causes to be made a report of suspected abuse, neglect..."

189. Pursuant to R.C. § 3721.24(A), protected activity also includes a person who "indicates an intention to make such a report."

190. Riegal's termination of Clinton's employment was in violation of R.C. § 3721.24.

191. Orchard Villa's termination of Clinton's employment was in violation of R.C. § 3721.24.

192. As a direct and proximate result of Defendants' conduct, Bell suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Clinton demands from Defendants the following:

(a) Issue an order requiring Defendants to restore Clinton to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Clinton for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Clinton claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: fred.bean@spitzlawfirm.com
taurean.shattuck@spitzlawfirm.com

*Attorneys For Plaintiff*

## **JURY DEMAND**

Plaintiff Hailey Clinton demands a trial by jury by the maximum number of jurors permitted.

>*/s/ Fred M. Bean*
>Fred M. Bean (0086756)
>Taurean J. Shattuck (0097364)
>**THE SPITZ LAW FIRM, LLC**